1  ALAN J. WATSON (SBN 177531)
   alan.watson@hklaw.com
2  HOLLAND & KNIGHT LLP
   400 South Hope Street, 8th Floor
3  Los Angeles, CA 90071
   Telephone: 213.896.2400
4  Facsimile: 213.896.2450

5  *Attorneys for IDT Payment Services, Inc.*

6

7

8                    **UNITED STATES BANKRUPTCY COURT**
                     **CENTRAL DISTRICT OF CALIFORNIA**
9                       **LOS ANGELES DIVISION**

10

11  In re                          )    CASE NO. 2:20-bk-19466-NB
                                    )
12  MOISES SANCHEZ PORTILLO,        )    CHAPTER 7
                                    )
13        Debtor.                   )
                                    )
14                                  )
                                    )
15  _____)
                                    )
    IDT PAYMENT SERVICES, INC.      )    Adv. Proc. No.
16                                  )
        Plaintiff,                  )
17                                  )
        v.                          )    **COMPLAINT TO DETERMINE NON-**
18                                  )    **DISCHARGEABILITY OF DEBT**
    MOISES SANCHEZ PORTILLO,        )    **[11 U.S.C. § 523(a)(4) and (6)]**
19                                  )
        Defendant.                  )
20                                  )
                                    )
21                                  )
                                    )
22  _____)

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Plaintiff IDT Payment Services, Inc ("IDT") alleges as follows:

1.    This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. § 157(b).

2.    IDT is a New Jersey corporation with its principal place of business located at 520 Broad Street, Newark, New Jersey 07102.

3.    IDT regularly conducts business in the State of California, including entering into the transactions that are the subject of this lawsuit.

4.    Defendant Moises Sanchez Portillo, aka Moises M. Sanchez, ("Debtor") is the debtor in the underlying Chapter 7 case.

5.    This is an action to establish that the debt owed by Debtor to Plaintiff is non-dischargeable.

## FACTUAL BACKGROUND

### IDT's Funds Transfer Business

6.    IDT is in the business of, among other things, transferring funds for customers.

7.    As part of IDT's business, a customer pays funds to an agent of IDT and completes a transfer request; IDT then transfers the funds to the customer's designated recipient.

8.    The funds are held in trust for the benefit of IDT.

9.    IDT charges a fee for this service.

10.    IDT operates through appointed agents who collect the funds from the customer and who assist the customer in completing the transfer through IDT.

11.    The appointed agent receives a commission from a portion of the fees collected from the customer.

12.    The appointed agent then transfers the collected funds that are held in trust to IDT under the terms of an agent appointment agreement. At the end of each month, IDT issues a credit to the agent for the commissions earned by the agent.

//

//

//

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

**The Agreement**

13.     On or about December 7, 2017, IDT entered into a Payment Services Agent Appointment Agreement (the "Agreement") with Debtor doing business as Genesis Market (The Agreement is attached as **Exhibit "1"**).

14.     Debtor, doing business as Genesis Market ("Genesis"), was the appointed agent under the Agreement.

15.     According to Genesis' Statement of Information filed with the Secretary of State on February 7, 2020, the chief executive officer of Genesis was Debtor.

16.     Under the Agreement, Genesis agreed to act as a collection agent for IDT whereby it would collect customer's funds and place the funds in trust for IDT ("Trust Funds").  The Trust Funds were to be transferred daily to IDT.

17.     The Agreement states with regard to the Trust Funds:

> Establishment of a Trust. Agent acknowledges that (i) by operation of this Agreement and applicable law, a trust is hereby established over any and all funds collected from Consumers for the Services (except the Transaction Fee) (collectively, the "Trust Funds") for the sole benefit of IDT until the Trust Funds are received by IDT (or a third party designated by IDT), (ii) Agent will receive the Trust Funds as a fiduciary of IDT or as otherwise indicated on the applicable Service Schedule, and (iii) the Trust Funds and IDT's portion of the Transaction Fee are not and will not be deemed the property of Agent. Agent represents and covenants that the Trust Funds are not subject to, and during the terms of this Agreement will not be subject to, Agent's creditors or any lien placed on Agent or its owners or property.

Exhibit 1, Paragraph 2.5(A).

18.     Under the Agreement, Debtor signed, in his individual capacity, as Guarantor of Genesis, and agreed to pay IDT's attorneys' fees and costs in connection with Genesis' failure to pay or perform any obligations under the Agreement.

19.     The Guaranty provision of the Agreement states as follows:

> 13.  Guaranty and Confession of Judgment.
> 13.1  Guaranty. In order to induce IDT to enter into this Agreement and in consideration thereof, the Guarantor identified on the signature page hereto personally guaranties to IDT the prompt payment in full by Agent of all sums and amounts payable to IDT under this Agreement and the prompt and complete performance by Agent of all other obligations hereunder. The Guarantor agrees to pay on demand all sums due IDT under this

2
COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

Agreement and all damages, losses, costs, attorney's fees and expenses that IDT may suffer by reason of Agent's failure to pay or perform any obligation under the Agreement, without IDT first having to proceed against Agent. This guaranty is an absolute, unconditional and continuing guaranty of payment. IDT may at any time without the Guarantor's consent, and without affecting or impairing the obligation of the Guarantor, waive or amend any of the obligations of the Agent. No termination of this guaranty shall be affected by the death of the Guarantor. Guarantor waives notice of acceptance hereof and presentment, demand, protest and notice of nonpayment and any other demands and notices whatsoever, and waives all set offs and counterclaims. This indemnity and guaranty shall bind Guarantor's respective administrators, personal representatives, successors and assigns, and shall inure to IDT's successors and assigns.

Exhibit 1, Paragraph 13.

### Genesis and Debtor Breach the Agreement

20.    The parties performed their duties under the Agreement until January 2020.

21.    From January 6, 2020 until at least January 14, 2020, Genesis continued to collect funds for customer transfers as normal and IDT made the customer's requested transfers.

22.    However, Genesis failed to transfer the funds collected from IDT's customers to IDT in accordance with the terms of the Agreement.

23.    As of March 2, 2020, the amount of funds Genesis failed to transfer to IDT totaled not less than $55,691.58, thereby breaching the Agreement.

24.    IDT retained counsel, and on March 2, 2020, counsel for IDT sent demands to Genesis and Debtor for immediate payment pursuant to the terms of the Agreement and notified Debtor that he was in breach of the Agreement.  (Copies of the Demand Letters are attached hereto collectively as **Exhibit "2"**).

25.    Debtor failed to respond to the demands and failed to remedy his breach of the Agreement.

26.    During the course of performing services for Plaintiff, Debtor engaged in an intentional and premeditated scheme to misappropriate the Trust Funds held for Plaintiff.

27.    Namely, and for example, Plaintiff is informed and believes that Debtor made false representations to IDT that the Trust Funds were stolen.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

28.    In reality, a police report was never filed concerning the alleged crime and Debtor took no steps to pursue recovery of the Trust Funds, or to even alert Plaintiff to the alleged theft in a timely fashion.

29.    Upon information and belief, Debtor misappropriated the Trust Funds for his own personal use.

30.    Debtor sold Genesis to a third-party in or around February 2020 and did not use the proceeds from the sale to repay the Trust Funds to Plaintiff.

31.    Debtor is now managing a new store which he claims he has no ownership interest in.

32.    On March 9, 2020, Plaintiff filed a Complaint against Debtor and Genesis in the Superior Court of Los Angeles, County under case 20STCV09539 to recover for Debtor's breach of the Agreement.

33.    However, on October 19, 2020, Debtor filed his Chapter 7 bankruptcy petition prior to any judgment being entered.

34.    In his petition, Debtor scheduled an undisputed debt to IDT in the amount of $55,692.00.

**FIRST CAUSE OF ACTION**

Determination of Non-Dischargeability for Fraud while Acting in a Fiduciary Capacity

(11 U.S.C. § 523(a)(4))

35.    Plaintiff realleges and incorporates by reference, as though set forth in full, the allegations contained in the preceding paragraphs of the Complaint.

36.    Plaintiff and Debtor, as appointed agent for Genesis, had a trust relationship whereby Debtor agreed to  collect the Trust Funds owed to Plaintiff and to hold those monies in trust until Debtor transferred the Trust Funds to Plaintiff.

37.    Debtor breached the Agreement to act as a trustee for the Trust Funds collected on Plaintiff's behalf by not transferring the Trust Funds to Plaintiff after collection from customers. In not transferring the Trust Funds to Plaintiff, Debtor was able to keep for himself significant

COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

1  amounts of money he had collected for Plaintiff and, under the Agreement, was required to transfer

2  to Plaintiff on a regular basis.

3          38.    Alternatively, to the extent Trust Funds were stolen from Plaintiff prior to transfer to

4  Plaintiff, Debtor breached the Agreement to act as a trustee for the Trust Funds collected on

5  Plaintiff's behalf by failing to safeguard the Trust Funds and not filing a police report or otherwise

6  taking any action to recover the Trust Funds after the alleged theft.

7          39.    Debtor's statements that he would deliver the Trust Funds to Plaintiff misled and

8  deceived Plaintiff, who reasonably trusted Debtor to maintain the trust account and trustee status of

9  the relationship.

10         40.    Debtor, having acted as a trustee to Plaintiff for the collection and holding of the

11  Trust Funds collected on its behalf, and having, through fraud or defalcation, deceived Plaintiff,

12  kept from Plaintiff and for himself $55,691.58.

13         41.    Debtor's obligation to Plaintiff, in the amount of $55,691.58, and having been

14  obtained by fraud or defalcation, is non-dischargeable under 11 U.S.C. § 523(a)(4).

15         42.    The Guaranty provides that Plaintiff shall recover its attorneys' fees and costs arising

16  from Debtor's breach of the Agreement.

17                              **SECOND CAUSE OF ACTION**

18             Determination of Non-Dischargeability for Embezzlement and Larceny

19                                (11 U.S.C. § 523(a)(4))

20         43.    Plaintiff realleges and incorporates by reference, as though set forth in full, the

21  allegations contained in the preceding paragraphs of the Complaint.

22         44.    Debtor, as appointed agent for Genesis, collected customer funds for Plaintiff based

23  upon his representations that he would perform activities in accordance with the Agreement.

24  Debtor collected Trust Funds owed to Plaintiff for customer transfers, but misappropriated these

25  Trust Funds, did not transfer them to Plaintiff, and did so without informing Plaintiff of the

26  misappropriation.  As a result of the wrongful taking of the Trust Funds, Plaintiff has been damaged

27  in an amount believed to exceed $55,691.58.

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

45.     Debtor's misappropriation, having been done with the intent to retain the Trust Funds owed to Plaintiff, and having been done solely for his benefit, caused injury to Plaintiff and is non-dischargeable.

46.     All debts arising out Debtor's embezzlement and larceny are nondischargeable under 11 U.S.C. § 523(a)(4).

### THIRD CAUSE OF ACTION

Determination of Non-Dischargeability for Willful and Malicious Injury

(11 U.S.C. § 523(a)(6))

47.     Plaintiff realleges and incorporates by reference, as though set forth in full, the allegations contained in the preceding paragraphs of the Complaint.

48.     Under the clear language of the Agreement, and by operation of law, Debtor owed fiduciary duties to Plaintiff, including duties of loyalty, fidelity, honesty, and good faith.

49.     As alleged and more fully described above, Debtor breached fiduciary duties owed Plaintiff in failing to deliver the Trust Funds to Plaintiff.

50.     Debtor's acts were committed willfully and maliciously, in that he intended to keep the Trust Funds for himself, and further intended to cause harm that Plaintiff has suffered or otherwise knew or believed the consequences of his actions were substantially certain to result from such actions.

51.     As a proximate result, Plaintiff has suffered damages.

52.     All debts arising out Debtor's breach of his fiduciary duties owed to Plaintiff are nondischargeable under 11 U.S.C. § 523(a)(6).

### PRAYER FOR RELIEF ON ALL CAUSES OF ACTION

WHEREFORE, Plaintiff prays for relief as follows:

1.     For direct, consequential and compensatory damages in an amount in excess of $55,691.58, the exact amount to be proven at trial;

2.     For punitive damages in an amount to be determined at trial;

3.     For a determination that all amounts determined to be due and owing to Plaintiff is non-dischargeable;

4.    For costs of suit, including attorneys' fees, incurred herein; and

5.    For such other and further relief as the Court deems just and proper.


Dated: January 21, 2021                          **HOLLAND & KNIGHT LLP**

                                                 /s/ Alan J. Watson

                                                 _____

                                                 ALAN J. WATSON

                                                 *Attorneys for Plaintiff IDT Payment Services, Inc.*

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

7

COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

# Exhibit A

## Payment Services Agent Appointment Agreement

This Payment Services Agent Appointment Agreement ("Agreement"), effective as of the date set forth on the signature page, is between the agent identified on the signature page ("Agent") and IDT Payment Services, Inc. or IDT Payment Services of New York LLC (collectively, "IDT"). Agent and IDT are each referred to herein as a "Party" and collectively as the "Parties." For Agents that reside in New York, the contracting IDT entity is IDT Payment Services of New York LLC and for Agents that reside outside of New York, the contracting IDT entity is IDT Payment Services, Inc.

Whereas, IDT is engaged in money transfer and other money service businesses (collectively, the "Services") and is licensed or otherwise authorized to provide the Services in the jurisdictions where it is licensed;

Whereas, IDT desires to appoint Agent as its representative and designated agent, solely to the extent required by applicable law, with the authority to provide the designated Services from time to time pursuant to the terms of this Agreement;

Whereas, the Parties desire that Agent offer IDT's Services to consumers pursuant to the terms of this Agreement.

For good, valuable and sufficient consideration, the Parties agree as follows:

1.    Appointment.

1.1    Designation and Acceptance. IDT hereby appoints Agent as its representative and designated agent with the authority to sell and to provide the Services to consumers on behalf of IDT only in accordance with the terms and conditions of this Agreement, any applicable Service Schedules (as defined in Section 2.1) and exhibits hereto and all applicable laws. Agent accepts such appointment and agrees to offer the Services only from its locations set forth, from time to time, on Schedule A attached hereto (each a "Location"). Agent will not offer the Services from any other venue or change or add a Location without the prior written consent of IDT.

1.2    Express Authorization. Agent acknowledges that it is under an express duty to act only as authorized by IDT under this Agreement and the applicable Service Schedules and exhibits hereto. Agent acknowledges that any unauthorized provision of the Services shall constitute a material breach of this Agreement for which IDT shall have no liability and for which IDT may terminate the Agreement.

1.3    No Delegation. Agent may not appoint sub-agents or delegates or assign or delegate its appointment hereunder without the prior written consent of IDT and any regulatory authority whose consent is required by applicable law. If Agent appoints sub-agents or delegates hereunder, it agrees that it will be responsible for all of the activities and obligations of such sub-agents in connection with the Services.

1.4    Subject to Supervision. Agent acknowledges that it and its activities hereunder are subject to the supervision, examination with or without notice, and the rules and regulations and audit powers of the applicable state and federal regulators.

2.    Payment Services.

| REVIEWED BY LEGAL DEPT. | |
|---|---|
| Date | Initial |
| 11/15/17 | MG |

2.1    <u>Available Services</u>.  Agent hereby agrees that it will use its best efforts to develop and expand the sale of the Services.  The Services consist solely of the following:

- Money Transfer (<u>Service Schedule A</u>) – general money transmission services to locations outside the United States;

- International Bill Payment (<u>Service Schedule B</u>) –walk-in international bill payment services whereby a U.S. consumer can make payments on certain personal accounts/invoices issued by a biller in another country, which payments are then processed and remitted to the international biller on behalf of a beneficiary;

- GPR Cards (<u>Service Schedule C</u>) – general purpose reloadable cards whereby consumers can purchase, load and reload prepaid cards that can be used to purchase goods and services;

- Virtual Prepaid Access Accounts (<u>Service Schedule D</u>) – virtual prepaid debit account that can be loaded and used to purchase goods and services on-line or via mail order; and

- U.S. Domestic Bill Payment (<u>Service Schedule E</u>) - walk in U.S. domestic bill payment services whereby a U.S. consumer can make payments on certain personal accounts/invoices issued by a biller in the United States, which payments are then processed and remitted to the biller on behalf of a beneficiary.

Each of the Services has a schedule that sets forth additional terms and conditions for that Service (a "<u>Service Schedule</u>").  IDT, in its sole discretion, may offer and make available to Agent additional Services.

2.2    <u>Transactions</u>.  Agent shall initiate and process all transactions for consumers ("<u>Consumer</u>") for each of the Services at a Location according to IDT's instructions and procedures, this Agreement and the applicable Service Schedules and exhibits (each a "<u>Transaction</u>").  Agent will collect only cash from the Consumer for a Transaction unless another form of payment has been pre-approved by IDT in writing. Agent will process the Transactions using the portal and systems provided by IDT by inputting the required data.  Agent will not conduct a Transaction unless the Consumer has paid in advance the principal amount of the Transaction and all required fees and taxes for such Transaction.  IDT in its sole discretion shall set the Transaction exchange rates, if applicable, from time to time.

2.3    <u>Transaction Fee</u>.  Agent shall charge Consumers a transaction fee ("<u>Transaction Fee</u>") for each Transaction and Agent will not collect any other fees or charges from a Consumer for the Services, except that Agent may collect any applicable taxes which will be the sole responsibility of Agent.  IDT shall set the amount of the Transaction Fee, which may vary depending on the type of Transaction.  IDT reserves the right to change the amount of a Transaction Fee at any time without prior notice.

2.4    <u>Commission</u>.  Agent shall earn a commission for each processed Transaction, which shall be paid from the Transaction Fee.  IDT shall set the amount of the commission, which may vary depending on the type of Transaction, and reserves the right to change the commission at any time without prior notice. The initial amount of the commission for each Service is listed in the applicable Service Schedule.  Agent shall be permitted to retain its earned commission for each Transaction from the funds it receives from the Consumer.  Notwithstanding the foregoing, IDT, in its sole discretion, at any time and for any reason, may require that Agent receive its commission by check or other payment directly from IDT on a monthly basis.

| REVIEWED BY LEGAL DEPT. | |
|---|---|
| Date | Initial |
| 11/15/17 | MG |

2.5    <u>Trust Funds</u>.

(A)    <u>Establishment of a Trust</u>.  Agent acknowledges that (i) by operation of this Agreement and applicable law, a trust is hereby established over any and all funds collected from Consumers for the Services (except the Transaction Fee) (collectively, the "<u>Trust Funds</u>") for the sole benefit of IDT until the Trust Funds are received by IDT (or a third party designated by IDT), (ii) Agent will receive the Trust Funds as a fiduciary of IDT or as otherwise indicated on the applicable Service Schedule, and (iii) the Trust Funds and IDT's portion of the Transaction Fee are not and will not be deemed the property of Agent.  Agent represents and covenants that the Trust Funds are not subject to, and during the terms of this Agreement will not be subject to, Agent's creditors or any lien placed on Agent or its owners or property.

(B)    <u>Delivery of Trust Funds</u>.  Agent will deposit or deliver the Trust Funds and IDT's portion of the Transaction Fee for each Transaction in cash (in U.S. dollars only) on a daily basis (or as otherwise directed by IDT) pursuant to one or more of the following methods as determined by IDT in its sole discretion:

(i)    <u>Deposit into an IDT Account</u>.  Agent shall deposit the funds into an account in the name of IDT (the "<u>Settlement Account</u>"), which will be held in a federally insured bank located in the United States;

(ii)    <u>ACH Transfer</u>.  Agent shall deposit the funds into an account in the name of Agent from which IDT will initiate an electronic funds transfer of the funds out of the Agent's account and into the Settlement Account.  Agent shall execute all documents required to authorize IDT to initiate an electronic funds transfer of the funds out of the Agent's account and into the Settlement Account.  Such funds shall not be deemed delivered to IDT until the Agent's bank may no longer rescind such transfer and any funds commingled in the Agent's account shall be deemed to be impressed with a trust in favor of IDT until the Trust Funds and IDT's portion of the Transaction Fee for each Transaction have been received by IDT;

(iii)    <u>Delivery to a Third Party</u>.  Agent shall deliver the funds to a third party designated by IDT;

(iv)    <u>Armored Car</u>.  Agent shall deliver the funds by armored courier, in which case the funds shall be deemed to be received by IDT as such time as such funds are physically delivered to the armored courier.  The amount of the delivered funds is subject to verification by the armored courier and any shortage of funds shall be charged to the Agent; and/or

(v)    <u>Prepayment</u>.  IDT may require that Agent prepay a set amount to IDT from which IDT will deduct the applicable Trust Funds and Transaction Fee for each Transaction.  IDT shall determine the initial amount of the prepayment and Agent shall deposit such amount with IDT.  No interest will be earned or paid on the deposited amount.  Agent agrees that IDT may use, apply or retain the prepayment for any amount owed by Agent to IDT under this Agreement.  IDT will distribute to Agent its portion of the Transaction Fee for each Transaction from the prepayment.  At the end of this Agreement IDT shall return any remaining prepayment balance.  Agent agrees that it will not assign or encumber the

REVIEWED
BY
LEGAL DEPT.
| Date | Initial |
| 11/15/17 | MG |

prepayment monies deposited with IDT. Agent shall be responsible for replenishing the prepayment amount as funds are deducted or as otherwise requested by IDT.

(C)    Failure to Make Deposit. If Agent fails to make a timely deposit or delivery of the Trust Funds for a Transaction, then IDT may (a) charge interest at the highest amount permitted by applicable law compounded monthly until the amount due is paid in full, (b) require that the entire Transaction Fee, including Agent's portion, be deposited with IDT, (c) suspend the Services to Agent for a set period of time, (d) terminate this Agreement and /or (e) take any action against Agent allowable under the law or equity.

(D)    Loss Recovery. Agent will be liable for all losses and hereby assumes all risk of loss for all Trust Funds received by Agent until the Trust Funds are received by IDT (or a third part designated by IDT), including without limitation, (i) losses due to theft, forgery, ACH failure, negligence or fraud or (ii) losses caused by Agent's acceptance of a form of payment in connection with the Services which results in insufficient funds or funds obtained in a fraudulent manner. Without limitation, this liability shall exist whether the Trust Funds were lost without explanation, by force majeure or in any other manner, known or unknown. Agent must inform IDT within 24 hours of the time Agent learns of or has a reason to know of any loss of Trust Funds.

2.6    Services Generally. Agent acknowledges that IDT shall have the right, in its sole discretion, from time to time, to establish, alter or amend the terms and conditions, methods of payment or other matters relating to the provision of the Services. Agent's continued offering of the Services after any such change shall be deemed acceptance of such change. Agent shall be solely responsible for the correctness and legitimacy of all Services conducted by it and for all data entered by Agent and its employees and representatives in connection with the Services. Agent shall not intentionally or negligently falsify Transaction records or engage in deceptive, fraudulent or misleading conduct that is or could be detrimental to IDT and/or the Services. All Services conducted by Agent shall be in accordance with IDT's instructions and written procedures as provided to Agent from time to time. If IDT determines, in its reasonable discretion, that applicable law requires a modification to the manner in which Agent provides a Service, then upon notice to Agent, Agent shall utilize commercially reasonable efforts to modify its provision of the Service to comply with applicable law.

2.7    Suspension of Services. Agent acknowledges that IDT shall have the right, in its sole discretion, to suspend or discontinue any or all of the Services at any time and for any reason without notice (unless notice is required by applicable law). Upon receipt of a notice of cancellation of a Service, Agent shall immediately (a) cease and cause each of its Locations to cease offering such cancelled Service and (b) remove and cause each of its Locations to remove any signage or other promotional material related to the cancelled Service.

3.    Other Duties of Agent.

3.1    Change in Ownership. The Agent agrees to notify IDT of any change of 10% or more in its ownership no less than five days after the change and to provide IDT, upon request, information requested by IDT to allow it to perform appropriate due diligence on such change.

3.2    Application Information. Agent confirms that all information in the Agency Application is truthful, accurate and complete.

4

| REVIEWED BY LEGAL DEPT. | |
|---|---|
| Date | Initial |
| 11/15/17 | MG |

     3.3    <u>AML/BSA Training and Compliance</u>.  Agent agrees that all of its principals and employees who engage in or process Transactions shall be required to take and complete compliance training ("<u>Training</u>") offered by IDT's Compliance Department regarding Anti Money Laundering, Bank Secrecy Act and Office of Foreign Assets Control policies, procedures, requirements and regulations (collectively, the "<u>Policies</u>").  Agent shall receive and maintain a copy of IDT's compliance training manual (the "<u>Compliance Manual</u>").  Agent acknowledges that any violation of IDT's Compliance Manual or the Policies shall be deemed a material breach of this Agreement and may result in the termination of Agent's authorization hereunder.  Agent confirms that it will be responsible for enforcing the Policies and for ensuring that all of its principals and employees who engage in or process Transactions take the Training.

4.    <u>Confidential Information</u>.  Agent will not at any time, whether during or after the term of this Agreement, disclose or make available to any person or entity any Confidential Information without the prior written consent of IDT.  For purposes of this Agreement, "<u>Confidential Information</u>" means financial or personal information provided by a Consumer, the terms of this Agreement (including the commissions) or information about the business, plans, sales, branding or marketing strategy, technology, pricing, products, financial condition and performance of IDT or its affiliates.  Agent shall only use, maintain and disclose the Confidential Information in accordance with applicable law and only for purposes of performing its obligations under this Agreement.  If any Confidential Information is sought by legal process, then Agent shall promptly notify IDT prior to any disclosure so that IDT may contest such request and if any protective order or other remedy is not obtained shall only disclose such Confidential Information that is required.  Upon termination of this Agreement, Agent agrees to delete, return to IDT or destroy (except as otherwise provided in the Agreement) all Confidential Information, except to the extent the Agent is required by law to retain such Confidential Information.  Agent acknowledges that it will be in possession of personal information of the Consumers.  Agent and its employees are responsible for safeguarding this personal information in a manner consistent with any and all state and federal laws governing the personal information of a Consumer or any third-party recipient of the Services purchased by Customer, including any obligations imposed under any applicable state or federal privacy laws and any rules promulgated by an agency having jurisdiction over the Agent's activities.  Similarly, Agent shall comply with any and all corporate policies of IDT related to the safeguarding of Consumer information.  In no circumstance shall Agent facilitate access to Consumer personal information through the portal and systems provided by IDT by anyone other than Agent.  If Agent becomes aware of any unauthorized access to Consumer information, then Agent shall immediately report this access to IDT and comply with any and all state and federal laws regarding notification to a Consumer regarding such unauthorized access.  In recognition of the unique, personal and proprietary nature of the Confidential Information, Agent agrees that an impending or existing violation of these confidentiality provisions by it may cause irreparable injury to IDT or the Consumers for which there is no adequate remedy at law, and agrees that IDT shall be entitled to seek equitable relief, including without limitation, injunctive relief and specific performance, prohibiting such violation in addition to any other available remedies.

5.    <u>Advertising and Promotion Materials</u>.  Agent will only use, display and disseminate advertising and promotional material regarding IDT and the Services that has been pre-approved by IDT in writing.  Agent will also display, in accordance with IDT's instructions, all informational materials or signage required by applicable law as provided by IDT.  Agent will provide sufficient and prominent wall, window, floor and/or counter space for the display of such advertising, promotional or regulatory materials.

6.    <u>Forms and Equipment</u>.  Agent agrees to comply with the terms and practices contained in the Compliance Manual.  IDT will provide Agent with such other information and forms necessary for the offering the Services, including, if applicable, signage and deposits slips ("collectively, the "<u>Supplies</u>").  Agent agrees not to deviate from or change the Supplies without IDT's prior written consent.  IDT may

| REVIEWED BY LEGAL DEPT. | |
|---|---|
| Date | Initial |
| 11/15/17 | MG |

provide Agent with a computer, terminal or other equipment used to provide Services (collectively, the "Equipment"). In such case Agent agrees to (a) use the Equipment only for the provision of Services as contemplated in this Agreement and in compliance with all IDT policies and procedures regarding the Equipment and not in any unlawful or unauthorized manner, (b) not modify, repair, move, or disassemble the Equipment without the prior written consent of IDT, (c) maintain and protect the Equipment, (d) ensure that only its authorized employees have access to and use the Equipment and (e) return the Equipment to IDT in good condition, normal wear and tear excepted, when the Agreement ends or at IDT's request. Agent acknowledges that IDT is the owner of the Equipment, that this Agreement does not constitute a lease or sale of the Equipment and that Agent is liable for any damage to the Equipment. If Agent provides its own computer terminal and equipment, then IDT will provide the specifications therefor and Agent shall be responsible for their repair and maintenance. Agent hereby permits and authorizes IDT to remotely access the Equipment (or Agent's own computer) in order to perform routine maintenance and troubleshoot any issues with the Equipment (or Agent's own computer) regarding the Services and processing Transactions. Agent agrees that IDT and its employees shall not be liable to Agent for any damages caused by such remote access, except for damages due to IDT's or its employees' intentional misconduct.

7.      Compliance with Law. Agent agrees that it is responsible for and will comply with all applicable laws, orders, rules and regulations regarding its provision of the Services, including the applicable state specific provisions set forth on Schedule B hereto for the state(s) in which Agent operates and all aspects of the Bank Secrecy Act and all federal and state anti-money laundering laws and regulations, including but not limited to:

- establishing an anti-money laundering program and reporting suspicious activities to the IDT Compliance Department;

- filing all required reports with regulators as required by the Bank Secrecy Act and state law;

- maintaining records for six years as required by the Bank Secrecy Act and state law;

- training its employees at least annually on anti-money laundering rules and issues, and complying with all applicable regulations of the Office of Foreign Assets Control (OFAC);

- obtaining all governmental approvals, authorizations, consents or permits required for Agent to conduct its business and offer the Services;

- reporting to the U.S. federal government any activity that appears to represent possible money laundering or other criminal or unusual activity and sending a copy of each report to IDT; and

- refusing to complete any Transaction that is reported as, or believed to be, suspicious.

Agent agrees to provide IDT with notice within 36 hours of the occurrence of: (a) any litigation, investigation, proceeding, suspension or dispute between Agent and any governmental authority or regulator and/or (b) any claim, complaint, order, citation or notice, whether formal or informal, written or oral, received from a governmental authority or regulator.

8.      Records. All records of Transactions (and the information included therein) are the property of IDT, and will be subject to IDT's possession, audit and review upon demand. Agent will use such records and

6

<table>
<tr><td colspan="2">REVIEWED<br>BY<br>LEGAL DEPT.</td></tr>
<tr><td>Date</td><td>Initial</td></tr>
<tr><td>11/15/17</td><td>MG</td></tr>
</table>

information only in its performance of its obligations under this Agreement and will not disclose the same to any other person or entity (other than IDT), except as may be required by law. Upon request, Agent shall keep such records for the time period specified in the law applicable to it, but in no event less than six years. Upon demand, Agent shall make those records available to IDT and any state or federal government agency to which the Agent is subject.

9.      Rights. IDT shall remain the owner of all rights in and to all Supplies, Equipment and marketing and promotional materials supplied by it to Agent hereunder and Agent shall not license or transfer any such materials to any third party. Such materials may only be used by Agent in connection with its obligations hereunder and shall be immediately returned to IDT upon the termination of this Agreement. All intellectual property used in or associated with the Services, including without limitation, corporate names, trademarks, service marks, trade names and logos (collectively the "Marks") are and shall remain the exclusive property of IDT (or its affiliates) or third parties, as applicable. Agent has no rights therein and shall not reproduce or use any Mark without IDT's prior written consent.

10.     Insurance. Agent will procure and maintain, at its expense, adequate insurance to cover the loss or theft of the Trust Funds and shall assign the proceeds thereof to IDT in the event of a loss or theft of the Trust Funds. Agent shall procure and maintain, at its expense, all insurance required by law and any lease agreements for Agent's locations as well as general liability insurance in amounts, with insurers and under terms and conditions reasonably designed to protect Agent against business risks and to cover potential losses and Agent's indemnification obligations under this Agreement. Agent will provide IDT with a copy of its applicable insurance policies within 30 days after execution of this Agreement and thereafter upon request by IDT (such request to be not more than once per year).

11.     Term. This Agreement has an initial term of three years ("Term") commencing on the date IDT signs this Agreement. This Agreement shall automatically renew for successive one year terms unless either party gives written notice of non-renewal at least 180 days before the end of the then current Term or the Agreement is terminated pursuant to Section 12 below.

12.     Termination.

        12.1    Termination by IDT. IDT, in its sole discretion, may terminate this Agreement at any time with or without cause upon five days' prior written notice to Agent.

        12.2    Immediate Termination. IDT may immediately terminate this Agreement with or without prior notice to Agent if:

●       IDT discontinues the Services in the state(s) where Agent operates hereunder;

●       IDT determines that continuing the Services in the states(s) where Agent operates hereunder might violate any laws, rules or regulations;

●       IDT reasonably believes that Agent is or may be violating any federal or state law applicable to the Services;

●       IDT reasonably believes that Agent's actions create or may create undue risk or loss for IDT; or

●       Agent's material breach of this Agreement, including any Service Schedule.

7

| REVIEWED |  |
| BY |  |
| LEGAL DEPT. |  |
| Date | Initial |
| 11/15/17 | MG |

12.3    <u>Effect of Termination</u>.  Upon termination of this Agreement for any reason:

- Agent's obligations regarding any outstanding Transaction will continue until the Transaction has been completed and all related payments have been settled between Agent and IDT;

- All amounts payable hereunder will become immediately due and payable;

- At IDT's request, Agent will render a full accounting of its operation of the Services, return all Supplies, Equipment and other materials provided by IDT, and immediately remove all signs and marketing materials regarding the Services, and stop holding itself out as providing the Services;

- Agent will permit IDT to display a notice showing the telephone numbers and addresses of locations where the Services are available and Agent will keep such notice conspicuously posted at each Location for 180 days following termination of this Agreement; and

- Agent will refer all calls and Consumer inquiries relating to the Services only to IDT at the telephone numbers specified by IDT.

13.    <u>Guaranty and Confession of Judgment</u>.

13.1    <u>Guaranty</u>.  In order to induce IDT to enter into this Agreement and in consideration thereof, the Guarantor identified on the signature page hereto personally guaranties to IDT the prompt payment in full by Agent of all sums and amounts payable to IDT under this Agreement and the prompt and complete performance by Agent of all other obligations hereunder.  The Guarantor agrees to pay on demand all sums due IDT under this Agreement and all damages, losses, costs, attorney's fees and expenses that IDT may suffer by reason of Agent's failure to pay or perform any obligation under the Agreement, without IDT first having to proceed against Agent.  This guaranty is an absolute, unconditional and continuing guaranty of payment.  IDT may at any time without the Guarantor's consent, and without affecting or impairing the obligation of the Guarantor, waive or amend any of the obligations of the Agent.  No termination of this guaranty shall be affected by the death of the Guarantor.  Guarantor waives notice of acceptance hereof and presentment, demand, protest and notice of nonpayment and any other demands and notices whatsoever, and waives all set offs and counterclaims.  This indemnity and guaranty shall bind Guarantor's respective administrators, personal representatives, successors and assigns, and shall inure to IDT's successors and assigns.

13.2    <u>Confession of Judgment</u>.  Upon a failure to make any payment due IDT hereunder, the Agent and the Guarantor, jointly, severally and irrevocably (a) authorize an attorney chosen by IDT to appear for one or more of them to confess judgment without process in favor of IDT in such amount as may be unpaid under this Agreement plus interest, cost and reasonable legal fees, (b) consent to the immediate execution upon such judgment and (c) waive the benefit of any statute or rule of court (which may be waived) that would have afforded the Agent and/or the Guarantor any stay of execution or other relief from the immediate enforcement of any judgment obtained hereunder.  The authority granted under this Section 13.2 may be exercised on more or more occasions and in different jurisdictions as IDT shall deem advisable.

| REVIEWED |  |
| BY |  |
| LEGAL DEPT. |  |
| Date | Initial |
| 11/15/17 | MG |

    13.3    <u>Additional Guarantors</u>.  IDT may require that other individuals personally guaranty Agent's obligations under this Agreement, including the prompt payment in full by Agent of all sums and amounts payable to IDT under this Agreement.  Any additional guarantors shall be required to sign <u>Schedule C</u> attached hereto and incorporated herein.

14.    <u>No Warranties; Indemnification; Limitation of Liability</u>.

    14.1    <u>No Warranties</u>.  THE SERVICES PROVIDED HEREUNDER ARE BEING PROVIDED ON AN "AS IS" BASIS WITHOUT WARRANTY OF ANY KIND AND NEITHER IDT NOR ITS AFFILIATES, EMPLOYEES OR REPRESENTATIVES MAKE ANY REPRESENTATION OR WARRANTY TO AGENT OR ANY OTHER PERSON OR ENTITY, REGARDING THE SERVICES, WHETHER EXPRESS OR IMPLIED OR STATUTORY, AS TO THE DESCRIPTION, QUALITY, MERCHANTABILITY, NON-INFRINGEMENT, COMPLETENESS, OR FITNESS FOR A PARTICULAR USE OR PURPOSE.  ALL SUCH WARRANTIES ARE HEREBY EXPRESSLY EXCLUDED AND DISCLAIMED.

    14.2    <u>Indemnification</u>.  Agent shall defend, indemnify and hold IDT, its parent entities, subsidiaries and affiliates and their respective directors, officers, employees, agents, controlling persons and assigns harmless from any claims, demands, liabilities, losses, damages, judgments or expenses (including reasonable attorney fees and costs or penalties assessed by a regulatory authority) due to or arising out of (a) any act or omission by Agent or its employees related to this Agreement or the Services, (b) Agent's breach of any of its obligations, covenants, representations or warranties made in this Agreement, or (c) Agent's unauthorized use of IDT's Marks.

    14.3    <u>No Consequential Damages</u>.  IN NO EVENT SHALL IDT OR ITS AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR SUBCONTRACTORS BE LIABLE TO AGENT OR ANY THIRD PARTY FOR LOST PROFITS, LOST REVENUES, LOST BUSINESS OPPORTUNITIES, OR EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, EVEN IF SUCH DAMAGES WERE FORESEEABLE.  IF AGENT FAILS TO MAKE A TIMELY DEPOSIT OR DELIVERY OF TRUST FUNDS, THEN IDT MAY SEEK AND AGENT SHALL BE LIABLE FOR ANY PUNITIVE, SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES AVAILABLE AT LAW OR IN EQUITY IN ADDITION TO ANY OTHER REMEDY AVAILABLE TO IDT.

    14.4    <u>Limitation of Liability</u>.  IDT'S TOTAL LIABILITY FOR ALL LOSSES, CLAIMS, SUITS, CONTROVERSIES, BREACHES, OR DAMAGES FOR ANY CAUSE WHATSOEVER (INCLUDING THOSE ARISING OUT OF OR RELATED TO THIS AGREEMENT) AND REGARDLESS OF THE FORM OF ACTION OR LEGAL THEORY SHALL NOT EXCEED THE AMOUNT OF FEES RECEIVED BY IDT PURSUANT TO THIS AGREEMENT FOR THE SERVICES PERFORMED BY AGENT IN THE 6 MONTHS IMEDIATELY PRECEDING THE DATE ON WHICH THE EVENT GIVING RISE TO THE LIABILITY OCCURRED.

15.    <u>Assignment; Binding Effect</u>.  Agent may not assign or otherwise transfer this Agreement or any interest therein without IDT's prior written consent and any such assignment without IDT's consent shall be null and void.  IDT may assign or otherwise transfer this Agreement and its rights and duties hereunder, in whole or in part, to any third party without the consent of Agent.  This Agreement shall be binding upon and inure to the benefit of IDT, and its successors and assigns, and upon Agent and its successors and permitted assigns.

| REVIEWED BY LEGAL DEPT. | |
|---|---|
| Date | Initial |
| 11/15/17 | MG |

16.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to its choice of law provisions. In any proceeding to enforce this Agreement each party irrevocably submits to (a) the jurisdiction of the State and Federal courts located in New Jersey and (b) the jurisdiction of the State and Federal court located in the state where Agent is located, and each party waives any objection to proceedings in such courts on any grounds. **IDT AND AGENT IRREVOCABLY WAIVE All RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING ANY CLAIM RELATING TO OR ARISING UNDER THIS AGREEMENT**.

17.    Audit and Set-Off Rights. IDT may periodically, upon ten business days prior notice, conduct an audit of Agent during Agent's normal business hours regarding Agent's compliance obligations under this Agreement. IDT may offset any amounts owed by Agent to IDT hereunder from the commission due Agent or any other payment due Agent hereunder. IDT will give written notice to Agent of any offsets.

18.    Miscellaneous.

18.1    Force Majeure. Except for Agent's obligation to deposit/deliver Trust Funds, neither party shall be liable to the other party or deemed to be in default for any delay or failure in performance under this Agreement resulting, directly or indirectly, from any cause beyond its reasonable control.

18.2    Relationship. Agent is an independent contractor. This Agreement shall not create a partnership, agency, joint venture or any employment relationship between the parties. Neither party shall have the authority to make any statements or commitments on behalf of the other party with the other parties' prior written consent.

18.3    Expenses. Each party shall pay their own costs and expenses in connection with this Agreement, except as otherwise provided herein. Agent shall pay the reasonable fees, expenses and disbursements of counsel for IDT in the event IDT is required to enforce its rights hereunder or to collect any payments owing from Agent under this Agreement, including Trust Funds.

18.4    Severability. If any provision of this Agreement shall be held to be invalid, it shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect, unless the severance defeats the purpose of the Agreement, in which case, the Agreement shall be terminated.

18.5    Amendments. Except for IDT's rights to amend certain terms as specifically set forth in this Agreement, this Agreement may not be amended except in writing signed by the parties. Any changes made by IDT shall be deemed to have been accepted by the Agent if Agent continues to offer the Services after IDT has notified Agent of such change.

18.6    Waiver; Drafting; Translation. No waiver of any term or breach by a party will constitute a further waiver of that term or a waiver of any other term or other breach. All waivers must be in writing signed by the party making the waiver. The parties agree that in interpreting this Agreement there shall be no inferences against the drafting party. The headings used in this Agreement have been inserted for convenience of reference only and do not define or limit the provisions hereof. IDT may provide Agent with a translation of the English language version of this Agreement. If there is any inconsistency between a non-English version of this Agreement and the English version, then the English version shall govern.

| REVIEWED BY LEGAL DEPT. | |
|---|---|
| Date | Initial |
| 11/15/17 | MG |

18.7   Survival.  The sections that by their nature survive termination or expiration of this Agreement shall so survive, including without limitation, Sections 2.5, 4, 7, 8, 13 and 14 as well applicable sections of the Service Schedules.

18.8   Full Agreement.  This Agreement, including any schedules or annexes, constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings and discussions, whether oral or written, with respect to the subject matter.  No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party, which are not set forth expressly in this Agreement.

18.9   Notices.  All notices under this Agreement shall be in writing and sent by recognized overnight courier, hand delivery, facsimile to an authorized fax number, email to an authorized email address or by posting on the Boss Revolution portal, in each case properly addressed to a party.  IDT's and Agent's address, fax number and authorized email address are on the application accompanying this Agreement.

IN WITNESS WHEREOF, this Agreement has been executed by the parties as of the date set forth below.

EFFECTIVE DATE OF AGREEMENT:  12/07/17

**IDT Payment Services, Inc. or**
**IDT Payment Services of New York LLC**

Signature: _____

Print Name: __MARCELO  FUCHCA__

Title: ___CFO___

Name of Agent:  Moises M Sanchez
[print name of entity]

Signature: _____

Print Name: Moises    Sanchez

Title: ___Owner___

**GUARANTOR #1 - Principal Owner of Agent**
(Individually as to Sections 13.1 and 13.2 only)

Name (print):  Moises    Sanchez

Signature: _____

Date: _____12/07/17_____

| REVIEWED BY LEGAL DEPT. | |
|---|---|
| Date | Initial |
| 11/15/17 | MG |

# Exhibit B



**ReedSmith**

**Driving progress**
through partnership
**Christopher R. Murphy**
Direct Phone:  +1 312 207 6548
Email: crmurphy@reedsmith.com

Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
+1 312 207 1000
Fax +1 312 207 6400
reedsmith.com

March 2, 2020

**Via Email and UPS Next Day**

Moises M. Sanchez
d/b/a Genesis Market
3807 E Cesar Chavez Ave
Los Angeles, CA 90063
moisemar17@gmail.com

**RE: Demand for Payment Under Payment Services Agent Appointment Agreement**

Dear Moises:

This law firm represents IDT Payment Services, Inc. ("IDT") in connection with the above-referenced matter.  You are hereby notified that Genesis Market is in material breach of its obligations under the Payment Services Agent Appointment Agreement dated December 7, 2017 (the "Agreement") for having failed, among other reasons to tender timely payments thereunder.  In particular, IDT's records indicate that as of March 2, 2020, the amounts due under the Agreement total not less than **$55,691.58** (the "Balance").

Accordingly, demand is hereby made that Genesis Market immediately tender the Balance to IDT.  In the event the Balance is not paid in full by Tuesday, March 3, 2020 (the "Deadline"), IDT may, at its discretion, pursue any or all of its available remedies under the Agreement and applicable law.  IDT reserves all rights available at law and equity, including its right to seek its attorneys' fees and costs in connection with the enforcement of the Agreement.

Please give this matter your most immediate attention and direct all inquiries regarding the foregoing to the undersigned.  I look forward to your timely response and expeditious resolution to this matter.

Regards,

Christopher R. Murphy

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON
RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-151988754-358603-20001


**ReedSmith**

Driving progress
through partnership
**Christopher R. Murphy**
Direct Phone:  +1 312 207 6548
Email:  crmurphy@reedsmith.com

Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
+1 312 207 1000
Fax +1 312 207 6400
reedsmith.com

March 2, 2020

**Via Email and UPS Next Day**

Moises M. Sanchez
109 S. Isabela Ave
Monterey Park, CA 91754
moisemar17@gmail.com

**RE: Demand for Payment Under Payment Services Agent Appointment Agreement**

Dear Mr. Sanchez:

This law firm represents IDT Payment Services, Inc. ("IDT") in connection with the above-referenced matter.  You are hereby notified that Genesis Market is in material breach of its obligations under the Payment Services Agent Appointment Agreement dated December 7, 2017 (the "Agreement") for having failed, among other reasons to tender timely payments thereunder.  In particular, IDT's records indicate that as of March 2, 2020, the amounts due under the Agreement total not less than **$55,691.58** (the "Balance").

As you know, you executed a personal Guaranty (the "Guaranty"), in favor of IDT, guaranteeing prompt payment in full of all sums and amounts payable under the Agreement, and of prompt and complete performance of all other obligations thereunder.

Accordingly, demand is hereby made that you immediately tender the Balance to IDT.  In the event the Balance is not paid in full by Tuesday, March 3, 2020 (the "Deadline"), IDT may, at its discretion, pursue any or all of its available remedies under the Agreement and applicable law.  IDT reserves all rights available at law and equity, including its right to seek its attorneys' fees and costs in connection with the enforcement of the Agreement.

Please give this matter your most immediate attention and direct all inquiries regarding the foregoing to the undersigned.  I look forward to your timely response and expeditious resolution to this matter.

Regards,

Christopher R. Murphy

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON
RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-151989912-358603-20001